FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 20, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JONATHAN H.,[1]<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | No. 1:26-cv-3085-EFS<br><br>**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |

Plaintiff Jonathan H. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 benefits. The ALJ determined that Plaintiff, despite his severe anxiety and panic attacks,

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

could adjust to specific jobs that involved only occasional interactions with coworkers and the public. A vocational expert testified that those jobs would require training with "a trainer of some sort or another . . . on more than an occasional basis." Substantial evidence, therefore, does not support the ALJ's nondisability determination. This matter is remanded for further proceedings.

## I. Background

Plaintiff filed his Title 2 application for benefits in March 2023, alleging disability beginning April 1, 2021, due to depression, anxiety, and panic attacks.[2] He appeared for a hearing before ALJ Mark Triplett in April 2025, at which Plaintiff and a vocational expert testified.[3] Plaintiff, who was 57 years old at the time of the hearing, testified that he had worked for the same company for over 36 years and was the sales manager until he could no longer work because of severe anxiety and panic attacks.[4]

---

[2] Administrative Record (AR) 251, 276.

[3] AR 1–33.

[4] AR 11–13.

The ALJ issued a decision finding Plaintiff not disabled.[5] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent" with the medical evidence and other evidence.[6] The ALJ considered the lay witness statements from Plaintiff's wife.[7] The ALJ considered and assigned varying levels of persuasiveness to several medical opinions and prior administrative medical findings.[8] As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2026.
- Step one: Plaintiff had not engaged in substantial gainful activity since April 1, 2021, the alleged onset date.

---

[5] AR 47–65. Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[6] AR 55. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499 n.2 (9th Cir. 2022).

[7] AR 62–63.

[8] AR 60–63.

- Step two: Plaintiff had the medically determinable severe impairments of anxiety disorder, depressive disorder, obesity, essential hypertension, and degenerative disc disease.
- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.
- RFC: Plaintiff had the RFC to perform "medium work," as defined in 20 C.F.R. § 404.1567(c), that did not involve complex instructions or decisions. Plaintiff could only occasionally interact with coworkers and the general public, and could tolerate only occasional changes to the routine work environment.
- Step four: Plaintiff could not perform past relevant work.
- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as industrial cleaner, kitchen helper, or hand packager.[9]

---

[9] AR 52–65.

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied review.[10] Plaintiff now appeals to district court.[11]

## II. Standard of Review

When considering the ALJ's findings, the court is constrained to the reasons and supporting explanation offered by the ALJ.[12] Thus, the ALJ must articulate his findings and cite such supporting evidence to permit the court to meaningfully review the ALJ's findings.[13]

---

[10] AR 41–46.

[11] ECF No. 1.

[12] *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[13] *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[14] and such error impacted the nondisability determination.[15] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16]

---

afford the claimant meaningful review of the SSA's ultimate findings.").

[14] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[15] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[16] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that

## III. Analysis

Plaintiff argues this case must be remanded for an award of benefits because the vocational expert testified that an individual with Plaintiff's RFC could not adjust to substantial gainful activity. Plaintiff also contends the ALJ committed reversible errors in evaluating Plaintiff's subjective complaints and the medical opinions. In response, the Commissioner argues no error occurred and that the ALJ's decision is supported by substantial evidence. As is explained below, given the vocational expert's testimony regarding the training required for the jobs identified at step five, substantial evidence does not support the ALJ's decision. Because further administrative proceedings would serve a useful purpose and disability is not conclusively established, this matter is remanded for further proceedings.

---

detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

## A. Step Five: Plaintiff establishes consequential error.

Plaintiff argues the vocational expert's testimony is consistent with finding Plaintiff disabled because the vocational expert testified that an individual with an occasional-interactions RFC limitation cannot complete the training required for the jobs the ALJ identified at step five. For the following reasons, while the clearest reading of the vocational expert's testimony supports Plaintiff's argument, the testimony does not definitively establish disability, and further administrative proceedings will be useful.

### 1. Standard

A claimant's RFC is "the most [he] can still do despite [his] limitations."[17] The ALJ must assess the claimant's RFC based on all the relevant evidence in the record.[18] At step five of the sequential evaluation, the ALJ must determine whether the claimant's RFC and vocational factors enable him to make an adjustment to other work.[19]

---

[17] 20 C.F.R. § 404.1545(a)(1).

[18] *Id.*

[19] *Id.* § 404.1520(a)(4)(v), (g).

To make the step-five determination, the ALJ may solicit vocational expert testimony as to the availability of jobs in the national economy for a hypothetical individual with the claimant's limitations.[20] Generally, substantial evidence supports a step-five denial relying on properly supported vocational expert testimony that a hypothetical individual with the claimant's RFC and vocational factors can adjust to other jobs existing in significant numbers in the national economy.[21]

---

[20] *Id.* § 404.1566; *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014); Hearing, Appeals, and Litigation Law Manual (HALLEX) HA 01260.074.

[21] *See Terry v. Saul*, 998 F.3d 1010, 1013 (9th Cir. 2021); *Garrison*, 759 F.3d at 1011; *Bayliss v. Barnhart*, 427 F.3d 1211, 1217–18 (9th Cir. 2005); Soc. Sec. Rlg. (SSR) 24-3p, Titles II and XVI: Use of Occupational Information and Vocational Specialist and Vocational Expert Evidence in Disability Determinations and Decisions.

2. Vocational expert testimony

Here, the ALJ asked the vocational expert to consider a hypothetical individual of Plaintiff's age, education, and work history, who:

> can perform the full range of medium work. The individual can understand, remember, and carry out simple and detailed instructions but not complex instructions. The individual can make detailed but not complex work-related decisions. The individual can occasionally interact with coworkers and the general public. The individual can tolerate occasional changes . . . to the routine work environment.[22]

The vocational expert testified that the hypothetical individual could work as an industrial cleaner, kitchen helper, or hand packager.[23]

Plaintiff's attorney asked the vocational expert a follow-up question:

> if we have somebody -- understand that once they've got the job that the Judge's hypothetical fits, but I wanted to ask specifically about the early training period and probationary period when they're -- when they're just getting hired, interviewing, going through training and HR type stuff. If they're -- during this time period, the individual is only able to have occasional contact with their coworkers including

[22] AR 26–27.

[23] AR 27.

> supervisors, would this person be ready for competitive work, or would that be a shelter -- sheltered situation or special accommodation if we defined occasional as -- as it is vocationally?[24]

The vocational expert responded:

> Sure. And one way or the other, yes. Ultimately, there is an assumption that someone's going to be able to get through a training period, and then the training period is inevitably going to include a trainer of some sort or another. And that would be on more than an occasional basis, so it would exceed it from that perspective. Moreover, I -- I tend to look at somebody kind of akin to what you were alluding to. If they can't make it through the training period, I'm not really all that interested in even why. They're -- they're not even really able to work because they can't even get through the training period that would prepare them for potentially being able to work. And as a result . . . it may very well be a sheltered type situation. Whether it be because of physical or whatever, you know, if they -- if they can't be trained, then they can't work, and -- and so you can't even get to the work questions at that point.[25]

3. <u>ALJ's findings, and analysis thereof</u>

The ALJ crafted an RFC for Plaintiff that mirrored the hypothetical RFC posed to the vocational expert.[26] In particular, the

---

[24] AR 30.

[25] AR 30–31.

[26] AR 54; *see* AR 26–27.

RFC included: "The individual can occasionally interact with coworkers and the general public."[27] The RFC did not include limitations on interactions with supervisors. At step five, the ALJ determined Plaintiff was not disabled because he could adjust to the jobs the vocational expert identified.[28]

Due to the vocational expert's follow-up testimony, substantial evidence does not support the ALJ's step-five decision. Plaintiff's attorney asked the vocational expert if the ALJ's hypothetical individual could hold competitive work due to the jobs' training requirements, but Plaintiff's attorney added an extra point to the hypothetical RFC: "is only able to have occasional contact with their coworkers *including supervisors*."[29] The vocational expert responded that the jobs would have "more than occasional" interaction with "a trainer of some sort or another," so the job requirements would

---

[27] AR 54; *see* AR 26.

[28] AR 63–65.

[29] AR 30 (emphasis added).

"exceed" the hypothetical RFC.[30] In other words, the vocational expert testified that Plaintiff's follow-up hypothetical individual could not work as an industrial cleaner, kitchen helper, or hand packager.

Plaintiff's follow-up hypothetical, however, exceeded Plaintiff's RFC by specifying that the occasional-interactions limitation included supervisors. Even so, the vocational expert did not qualify his response based on the identity of the trainer. Rather, the vocational expert said that the jobs he identified would have "a trainer of some sort or another," broadly capturing supervisors and non-supervisors. His testimony implies that his response would have been the same if Plaintiff's attorney never added "including supervisors." In addition to the vocational expert's broad reference to any sort of trainer, the vocational expert referred to a general "training period"—which Plaintiff's attorney set up as "when they're just getting hired, interviewing, going through training and HR type stuff"—and never differentiated between the particular training requirements for the three identified jobs. For these reasons, it would be unreasonable to

---

[30] AR 30–31.

assume that the vocational expert intended to testify that the hypothetical individual would be able to survive training if his trainer was a supervisor. Therefore, the vocational expert testimony that training interactions would be more than occasional is not substantial evidence supporting the ALJ's step-five determination.

The Commissioner, in addition to emphasizing the "including supervisors" language in Plaintiff's attorney's question, responds that substantial evidence supports the RFC without a limitation on interactions with supervisors, and that the ALJ's vocational conclusions are consistent with the longitudinal record. Both points are inapposite based on the vocational expert's testimony of preclusive training requirements. Moreover, the Commissioner understates the difficulties someone with Plaintiff's mental impairments would have when training for even a simple job.[31] True, Plaintiff testified he

---

[31] *See* ECF No. 14 at 4–5 ("To argue, as Plaintiff does, that the ALJ's conclusion that he could work cannot stand on the ground that she [*sic*] allegedly could not be *trained*, even for a simple job as a cleaner or kitchen helper, is meritless.").

endured a long, high-stress career as a sales manager with "millions of dollars on the line," traveled frequently, and dealt with several customers.[32] But his anxiety and panic attacks ultimately prevented him from doing that work. He described, and medical professionals observed, anxiety that would seemingly arise even if he was training to work, for example, in a kitchen.[33] For someone experiencing severe anxiety, a new job's training/probationary period could be far more stressful than the typical role, as the pressure to learn new skills and

---

[32] *See* AR 11–13.

[33] *See, e.g.*, AR 16–17 (Plaintiff testified that his anxiety and panic would likely prevent him from showing up to work at a laundry facility just to fold towels because he gets "the anticipation anxiety just knowing that I have to go to these places. And like I said, it's kind of that cycle where the anticipation anxiety brings on the panic attack, just thinking about going without even making it there."); AR 517 (Plaintiff's doctor noted, "His anxiety and agoraphobia remain quite extreme. There are high levels of anticipation anxiety associated with any event outside of his home.").

adapt to an unfamiliar environment might be compounded by an overwhelming influx of social interactions. So, even considering Plaintiff's skills and past career, it is far from meritless for him to argue he could not interact as necessary to be trained for a simple job.

Although Plaintiff urges remand for an award of benefits, this case is remanded for further proceedings. Two of the requirements to remand a nondisability determination for an award of benefits are that (1) further administrative proceedings would serve no useful purpose, and (2) the error-corrected record would require a finding of disability.[34] Neither requirement is met here. On remand, the ALJ can elicit further vocational expert testimony that helpfully clarifies Plaintiff's capacity to meet the training requirements for any step-five jobs. Also, though a close call, the at-issue vocational expert testimony does not conclusively establish disability. The vocational expert did not specify the exact training requirements for any one of the three jobs he

---

[34] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

identified, and his phrasing leaves his testimony open to some amount of reasonable debate.

**B. Subjective Complaints and Medical Opinions: The issues are moot.**

Having already determined that remand is necessary, the Court need not address Plaintiff's additional challenges to the ALJ's evaluation of Plaintiff's subjective complaints and the medical opinions. On remand, the ALJ shall conduct the sequential evaluation anew.

## IV. Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process. The ALJ shall elicit further vocational expert testimony regarding whether a hypothetical individual of Plaintiff's RFC and vocational factors can adjust to other jobs, including whether the RFC precludes successfully completing any training requirements.

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social**

**Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 10 and 14**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 20th day of November 2026.

EDWARD F. SHEA
Senior United States District Judge